NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3234
_____

EDWARD BESKO,
                                        Appellant

v.

STATE OF NEW JERSEY JUVENILE JUSTICE COMMISSION
    _____

On Appeal from the United States District Court
for the District of New Jersey
(District Court No.: 3-12-cv-03008)
District Judge: Honorable Mary L. Cooper
    _____

Submitted under Third Circuit LAR 34.1 (a)
on March 7, 2014

(Filed: March 11, 2014)

Before: RENDELL, SMITH and HARDIMAN, Circuit Judges

    _____

O P I N I O N
    _____

**RENDELL**, Circuit Judge:

Appellant Edward Besko brought this reverse discrimination employment suit

against the New Jersey Juvenile Justice Commission ("JJC"), alleging that the JJC

discriminated against him on the basis of sex when it failed to hire him for the position of

Administrator, Employee Relations. Besko claims that the JJC's actions violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a)(1), and the New Jersey Law Against Discrimination (NJLAD), N.J. Stat. Ann. § 10:5-12 (West 2014). He appeals the District Court's grant of summary judgment in favor of the Defendant. We will affirm.[1]

## I. BACKGROUND

Besko began his employment with the State of New Jersey in 1979 with the Division of Motor Vehicles (DMV). He held several titles with the DMV, including Manager of Administrative Services, Manager of Health and Safety, and Manager of Employee Services, all of which involved resolution of personnel issues, negotiation with labor unions, and employee services. He was ultimately promoted to Assistant Chief of Labor Relations and Employee Services, where he conducted hearings and participated in the settlement of grievances and disciplinary actions. Besko left the DMV in 1996 and spent approximately eight months as an employee of the New Jersey Attorney General's Office as an occupational health and safety manager.

In 1996 or 1997, Besko was involuntarily transferred to the JJC and was assigned to the Facilities Department. His position was initially Manager Three DMV. However, after pressure from colleagues, including Lisa Bell, Manager of Human Resources, he reluctantly took a voluntary demotion to Administrative Analyst One. Over the next several years, Besko was transferred numerous times within the JJC. He worked in the Office of Health and Safety/Affirmative Action (8/98-2/99), Training Development/ Health & Safety (2/99-6/99), Internal Affairs/Training (6/99-6/00), Office of the Director

_____
[1] We have jurisdiction under 28 U.S.C. § 1291.

of Operations (6/00-12/00 and 5/02-8/02), Office of Employee Relations (12/00-5/02), the Office of Chaplaincy Services (8/02-10/09), and the Classification Unit (10/09-present). (App. 121-138.) Besko maintains that it was unusual for an employee to be transferred so often within the JJC, and that he was never supplied any reason for these numerous transfers.

Besko alleges that only one of the positions he held during his time at the JJC, in the Office of Employee Relations, was comparable to his previous position with the DMV, in that it was the only position in which he functioned in a human resources or labor relations role. Besko supervised one employee during his tenure in the Office of Employee Relations, but had only limited interactions with her. (App. 99.) He did not supervise other employees in any of his other positions in the JJC.

In April of 2010, a promotional opportunity arose when Marie Kraus, the Manager of Labor Relations who oversaw the Sick Leave/Injury unit (a Manager 2 Human Resources position) retired. The requirements listed for the position, titled Administrator, Employee Relations, were (1) a bachelor's degree from an accredited college; and (2) at least six years of experience as a labor relations hearing officer or negotiator, three years of which must have been in an administrative or supervisory capacity. Applicants without a college degree could substitute additional experience; similarly, an advanced degree could make up for one year of non-administrative or non-supervisory experience. Twelve individuals—two females and ten males—submitted applications for the position. Of these, four applicants—three males and one female—were selected for an interview. Besko was not one of the individuals selected for an interview.

3

The qualifications of the four interviewees were as follows: L.E., a female, had been a human resources manager consistently since 2001 but had held HR manager positions going back to 1995, with additional responsibilities as a labor relations manager from 2005-2008. (App. 396-98.) She had supervised one employee from 2002 through 2008 and six employees from 2008 through the time of her interview. (App. 396-97.) J.S., a male and an attorney, had extensive experience as a mediator for labor relations, ethics, and other employee relations issues, and supervised numerous employees. (App. 400.)[2] G.M., a male, had been working as a Hearing Officer 1, a position which evidently included supervising other hearing officers, since 2004.[3] (App. 390.) T.H., a male, had been a manager of human resources since 1986, and listed among his duties "conduct[ing] hearings for grievances and discipline" and "[m]anag[ing] staff dedicated to various human resource functions." (App. 393.) The interview committee, consisting of Lisa Bell, Maria Krause and Michele Shapiro (manager of the Employee Operations Unit), recommended L.E., a female, for the position. However, Veleria Lawson, Executive Director of the JJC, ultimately declined to appoint L.E. to the position.

The JJC ultimately withdrew the posting, and re-posted it on June 16, 2010, this time stating that "preferred" candidates would possess a J.D. and be admitted to practice law in New Jersey. Besko did not apply for the June 16, 2010 posting. The JJC did not

_____

[2] Our description of J.S.'s relevant experience is admittedly complicated by the presence of what is apparently a large sticky note over much of his work history. That sticky note states, "per S[redacted] NOT INTERESTED 6-10". The deposition of Lisa Bell suggests that the JJC actually offered J.S. the position after his interview, but that he declined it. (App. 193.)

[3] In her deposition, Lisa Bell indicated that she later hired G.M. as a hearing officer for the JJC.

hire anyone in response to the June 16, 2010 posting. On March 11, 2011, the position was listed once more, again indicating that preferred candidates would possess a J.D. Besko applied for the position but was not interviewed. The position was never filled; however, at the time of the parties' briefing on summary judgment, some of the responsibilities of the position were being handled by a male attorney on assignment to the JJC from the New Jersey Attorney General's Office.

Besko asserts that from at least 2004-2010 there were only four male employees in the JJC's Human Resources unit. By 2010, two had retired and two had been transferred outside the unit. Besko asserts that between 2009 and 2011 there were no male employees in JJC's Human Resources unit.

Besko received his right-to-sue letter from the EEOC on February 29, 2012. He filed this lawsuit on May 18, 2012, alleging that the JJC's failure to promote him to the Administrator, Employee Relations position was based on his gender. Following completion of discovery, the JJC moved for summary judgment. The District Court granted Defendant's motion, holding that Besko could not demonstrate that he was treated less favorably because he was male. The District Court stated that, "[a]lthough the JJC rejected Besko's application for the Job, it: (1) interviewed four applicants, three of whom were male; (2) elected not to award the Job to any applicant; and (3) ultimately assigned at least some of the responsibilities associated with the Job to a male attorney who works for the NJOAG." (App. 14.) As this issue was dispositive, the District Court did not address the JJC's other grounds for summary judgment. The District Court

5

dismissed Besko's claim under the NJLAD without prejudice, allowing Besko to revive it in state court.

Besko filed this timely appeal, arguing that the District Court erred when it held that he had failed to establish a prima facie case of reverse discrimination, and that the valid, nondiscriminatory reasons proffered by the JJC for its failure to promote Besko were pretextual.

## II. DISCUSSION

We review a district court's grant of summary judgment de novo. *Azur v. Chase Bank*, 601 F.3d 212, 216 (3d Cir. 2010). We determine whether any genuine issues of material fact exist, and whether, viewing the facts in the light most favorable to Besko, the Defendant was entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In a typical failure-to-hire case arising under Title VII, a plaintiff may make out a prima facie case by demonstrating that: "(1) the plaintiff belongs to a protected class; (2) he/she was qualified for the position; (3) he/she was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). In *Iadimarco v. Runyon*, 190 F.3d 151 (3d Cir. 1999), we clarified, in the context of a reverse discrimination claim, that "all that should be required to establish a prima facie case in the context of 'reverse discrimination' is for the plaintiff to present

6

sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII." *Id.* at 161.

As Besko acknowledges, the JJC never hired anyone, male or female, for the Administrator, Employee Relations position. Rather, it opted to re-post the position with an added preference that candidates possess a J.D. degree, and ultimately a male attorney took over some of the job responsibilities.[4] Besko has presented no evidence at all indicating that the JJC's ultimate decision not to fill the position had anything to do with discrimination against himself specifically or male candidates generally. As such, the only adverse employment action Besko can claim is the JJC's failure to select him for an interview.[5]

From the original pool of twelve applicants, the JJC selected three males and one female to interview. Thus, to prove he was discriminated against on the basis of his gender, Besko must adduce evidence sufficient for a juror to find that he was more

---

[4] Besko states that a J.D. was not essential for the position, and appears to suggest that the J.D. preference was added in order to prevent him from qualifying for the position. Testimony from JJC employees indicates that the preference was added because the Administrator, Employee Relations would represent the JJC before administrative law judges, and the judges preferred having an attorney before them. Moreover, even if the J.D. preference had been added specifically to prevent Besko from qualifying, this would not mean that such animus against Besko's candidacy was based on his gender. The preference that applicants possess a J.D. is gender-neutral, and nothing suggests that the addition of such preference would lead more women than men to apply for the position. Indeed, a male attorney ultimately took over some of the responsibilities of the position.
[5] Though we have doubts regarding whether the JJC's failure to interview Besko for a position that was never filled may provide the basis for a Title VII action (in the absence of any evidence that the decision not to fill the position was motivated by discriminatory animus), we assume for purposes of this opinion that it may.

7

qualified for the position than the female candidate that the JJC interviewed. Besko has failed to meet this burden. At the time of his application in 2010, Besko had not functioned in a human resources or labor relations role since his brief tenure in the JJC's Office of Employee Relations, which ended in May 2002. On the other hand, the sole female that the JJC selected for an interview had been a human resources manager consistently from 2001 to the date of the job posting, with additional responsibilities as a labor relations manager from 2005-2008. Both Lisa Bell and Michele Shapiro testified that the JJC was specifically looking for candidates with current experience. Moreover, the female interviewee had significantly more recent supervisory experience than Besko, having supervised one employee from 2002 through 2008 and six employees from 2008 through the time of her interview, whereas Besko had not supervised more than one employee since his time at the DMV in the mid-nineties. Indeed, Besko's resume does not mention *any* supervisory role from which JJC personnel could discern that he met the supervisory requirements listed. (App. 284-286.) Accordingly, he has failed to make out a prima facie case of reverse discrimination.

Finally, Besko's additional arguments fail to state a prima facie case of discrimination. Though Besko alleges that he was transferred numerous times throughout the JJC, he does not provide any evidence that such transfers were due to his gender. He does not state how many times similarly situated female employees were transferred; nor does he suggest that his transfers were adverse employment actions. Moreover, Besko's allegations regarding the lack of male employees at the JJC do not support his claim. Lisa Bell testified that the JJC did not hire anyone for a full-time position during the six

8

years prior to her retirement, and that during that time she hired several males on a contract basis. Though she stated that she had not hired any men as direct employees since 1996, she stated that she did not believe that any men applied. It is not enough for Besko to simply disagree with this testimony; rather, he must come forward with competent evidence to refute it. Besko has not pointed to any open positions in the JJC for which qualified men applied but were not hired. Nor has he pointed to any action by the JJC that prevented or discouraged men from applying. Without such evidence, no rational fact-finder could conclude that the JJC's predominantly female makeup was the result of gender-based discrimination.

For the foregoing reasons, we will affirm the District Court's grant of summary judgment for the Defendant.